# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 25-60589

JOHN DOE,

*Plaintiff,*

v.

JANE ROE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, JACKSON

## REDACTED VERSION OF [51-1] DOCUMENT RECEIVED – NO ACTION TAKEN

DANIEL M. PETROCELLI
MEGAN K. SMITH
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Eighth Floor
Los Angeles, California 90067
(310) 553-6700
dpetrocelli@omm.com
megansmith@omm.com

ERIC AMDURSKY
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California 94025
(650) 473-2600
eamdursky@omm.com

JONATHAN D. HACKER
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
jhacker@omm.com

R. DAVID KAUFMAN
M. PATRICK MCDOWELL
JACOB A. BRADLEY
BRUNINI GRANTHAM GROWER &
    HEWES, PLLC
P.O. Drawer 119
Jackson, Mississippi 39205
(601) 948-3101
dkaufman@brunini.com
pmcdowell@brunini.com
jbradley@brunini.com

*Attorneys for Plaintiff-Appellee John Doe*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JOHN DOE**                                                **PLAINTIFF**

vs.                             **CIVIL ACTION No.: 3:24-CV-547-HTW-LGI**

**JANE ROE**                                          **DEFENDANT**

---

## ORDER DENYING REQUEST TO USE PSEUDONYMS

---

Before this Court are multiple motions regarding the use of pseudonyms: "Plaintiff's Motion for Leave to File Complaint Under Pseudonym, to Proceed Pseudonymously, and to File Materials Under Seal" (ECF No. 4); "Defendant's Urgent and Necessitous Motion for Emergency Sealing or Redactions and for Sanctions" (ECF No. 18); and "Motion for Protective Order to Proceed Pseudonymously and Objection to Plaintiff's Use of Mrs. Roe's Name" (ECF No. 28). For the reasons set forth below, this Court **denies** the parties leave to proceed with this suit with their identities obscured from the public.

### I.    INTRODUCTION AND BACKGROUND

Defendant Jane Roe ("Ms. Roe") alleges that Plaintiff John Doe ("Mr. Doe"), ███████ ███████, raped her and subjected her to other harms ███████ ███████ some years ago.  In 2024, Ms. Roe's lawyer sent copies of a letter to various recipients, addressed to Mr. Doe, listing Ms. Roe's allegations and threatening public legal action should Mr. Doe fail to respond with efforts to settle the matter out of court.

Following some discussion between the parties' counsel, Mr. Doe filed this lawsuit, sub judice, which contends that Ms. Roe's allegations are false and amount to torts of intentional infliction of emotional distress; defamation; menace; and false light invasion of privacy. Subsequently, Ms. Roe filed, in the State of California, her own lawsuit, asserting wrongs

including assault and sexual battery. She claims that Mr. Doe's suit is an "abusive," "anticipatory" action.

After combative, pleading-stage motion practice, and multiple amendments to Mr. Doe's complaint, two central questions crystalized for this Court's consideration, the first of which this Court will answer herein: whether Ms. Roe, as a putative victim of sexual violence, should be entitled to proceed pseudonymously in this dispute, that is, without revealing her true name to the public. The second question, whether this action should remain before this Court—or be dismissed or transferred so as to be tried in federal court in California with Ms. Roe's suit, shall be the subject of a subsequent order.

## II.    DISCUSSION

### A.  Subject-Matter Jurisdiction

This Court first determines whether it has jurisdiction over the subject matter of the claims at issue, such that it may render judgment. Federal courts possess only "limited jurisdiction," with respect to which cases it may hear, "having only the authority endowed by the Constitution and that conferred by Congress." *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010) (internal quotations omitted); *see also* U.S. CONST. art. 3, § 2. If this Court "determines at any time that it lacks [such] subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3). Federal district courts, like this Court, "may exercise original jurisdiction over any civil action that either satisfies diversity requirements or that arises under the federal constitution, statutes, or treaties[.]" *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258–59 (5th Cir. 2014) (citing 28 U.S.C. §§ 1331, 1332, 1369).

Mr. Doe's complaint invokes diversity subject-matter jurisdiction, ECF No. 33 at 1 (¶3), codified at 28 U.S.C. § 1332, which proclaims:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States."

Mr. Doe alleges that he is an adult resident citizen of the State of ████ and that Ms. Roe is an adult resident citizen of the State of ████. ECF No. 33 at 1. Mr. Doe also alleges that the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. ECF No. 33 at 1. "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). Mr. Doe alleges that, ████ he has suffered damage to his "reputation," "career," and "livelihood," based on allegations of sexual violence and misconduct, and "emotional distress including anxiety, gastrointestinal pain, high blood pressure, and fear for himself and his family." ECF No. 33 at 1, 4. Mr. Doe seeks, as recompense, damages following under the headings of compensatory; consequential; and punitive. *Id.* at 6 He also requests attorney fees. *Id.*

This Court presently is satisfied that it has subject-matter jurisdiction based on diversity of citizenship under Section 1332(a). When hearing a diversity matter, this Court must apply federal procedural law—such as the Federal Rules of Civil Procedure and the Federal Rules of Evidence—and state substantive law of the state in which this Court sits—the State of Mississippi.

### B. Pseudonymity

The question whether Ms. Roe may proceed in this action using a fictitious name has been the subject of several motions and papers in this case. "John Doe" and "Jane Roe" are pseudonyms, created names for this litigation with no relation to the true names of the parties.

In some papers, the parties, however, have utilized their true names or party designations. Mr. Doe is referred to as the author of this lawsuit (civil number 3:24-cv-547 in this District), the

plaintiff in this action. Ms. Roe, the defendant sub judice, though, has filed her own action a different venue (No. ▮▮▮▮▮▮ in the ▮▮▮ District of California); and Mr. Doe and Ms. Roe fall on opposite sides of the "v." Piling on to the confusing nomenclature, Ms. Roe often refers to herself in this suit as the "putative plaintiff," due to her accusations against Mr. Doe.

Because of these complications in nomenclature, particularly in the litigation over pseudonymity, this Court for clarity, this Court uniformly refers to the parties as "Mr. Doe" and "Ms. Roe." Although this Court ultimately denies the request to try this case using pseudonyms, this Court will not reveal the parties' true names in this order until it confirms whether Ms. Roe will choose to appeal this interlocutory ruling to the Court of Appeals.

1.  Procedural History

Mr. Doe filed, in September 2024, his initial complaint using pseudonyms both for himself and for Ms. Roe. ECF No. 1. He concurrently filed a "motion for leave to file his Complaint under a pseudonym," that is, to proceed in this action using a false name, and to file under seal (or with redactions) any materials that would reveal the parties' true identities. ECF No. 4.

In that initial motion, Mr. Doe, revealed his alleged reason for seeking anonymity: "to prevent [Ms. Roe] from 'publicly filing' her untrue allegations of sexual misconduct against him." ECF No. 5 at 7. Continuing this theme, Mr. Doe stated that Ms. Roe's "false," "meritless," and "scandalous" allegations, if revealed to the public, "will result in the irreparable loss of [Mr. Doe's] goodwill and reputational harm in his industry." *Id.* at 3.

Ms. Roe struck back, characterizing Mr. Doe's suit as "an obvious attempt at gaming the judicial system" and "a preemptive abusive declaratory judgment action." ECF No. 11 at 1. She theorized, "[b]y being the first to file in Mississippi federal court and asking the Court to permit him to proceed under a pseudonym, Mr. Doe hopes that he will dupe this Court into granting his alleged claims priority and prevent Ms. Roe from disclosing all of her relevant facts, including his

identity, in her [then-intended] California complaint." *Id.* at 2. Ms. Roe added that "there is nothing preventing Ms. Roe from commencing her California action immediately and using [Mr. Doe's] identity." *Id.* She wrote, "Out of an abundance of caution, however, and because Ms. Roe respects this Court's authority to decide whether Mr. Doe can proceed under a pseudonym, she [would] wait until later [that] week to make sure there is no objection from this Honorable Court before filing her California action in this manner." *Id.*

Ms. Roe argued that Mr. Doe's claims of risk to reputation did not entitle him to anonymity, a remedy more often obtained by putative sexual assault victims. Ms. Roe clarified that she "believes that she should be permitted to remain anonymous;" but, if this Court were to determine that "the status of [Ms. Roe's] name meaningfully impacts whether [Mr. Doe could] proceed [pseudonymously,] Ms. Roe is willing to proceed and use her own name in this action." *Id.* at 11. She stated that, "[a]lthough Ms. Roe believes that her name warrants protection and that ultimately the California court should decide that issue, she is willing to proceed using her name here if this Court believes that is necessary in denying Plaintiff's motion." *Id.* at 12 n.11. Ms. Roe also argued that "no basis under Fifth Circuit law exists to grant Mr. Doe's request to seal the record or redact publicly filed documents to conceal the identities of [the parties]" *Id.* at 24. She concluded by requesting this Court's permission to file her own action in California, using Mr. Doe's true name, "absent objection from" this Court." *Id.*

Despite these indications that Ms. Roe would wait for a decision from this Court prior to filing her California action, she did not wait. On ███████████, ███ days after Ms. Roe's opposition, Ms. Roe filed a Complaint in the ████████████████████████ (a State Court), *using the name of the defendant*, suing for assault, battery, and several violations of the Civil Code of the State of California. The Complaint referenced this suit. *See* ECF No. ██

███████████████████████████████████████████████████████ (the state court complaint referring to "a preemptive abusive Complaint against Ms. Roe under the Declaratory Judgment Act, in the United States District Court For The Southern District of Mississippi, Northern Division, entitled *John Doe v. Jane Roe*, Case No. 24 Civ. 00547 (HTW) (LGI)"). As Mr. Doe would later inform this Court, that same day, Cable News Network ("CNN") Entertainment published an article describing the lawsuit and accusations. ████████████, *[X][1] accused of sexual assault and battery in lawsuit from* ████████████ *who worked for him*, CNN Entertainment (████████).

Mr. Doe then filed a reply. Mr. Doe argued that, by filing the California complaint and talking with media, Ms. Roe "short-circuited the judicial process and flouted this Court's authority," as the motion for sealing and redaction had not yet been "fully briefed." ECF No. 16 at 3, 5. Mr. Doe also alleged that Ms. Roe had "leaked Plaintiff's identity to the press" and provided drafts of the California complaint before it was publicly filed. *Id.* at 4. Mr. Doe supported this allegation by contending that CNN published its article "even before" the California complaint was on file. *Id.*

This Court cannot verify this fact, because CNN, on October 4, superseded the publishing date and time with an "updated" date and time. Mr. Doe also explained that other news outlets received copies of the complaint marked "UNFILED." *Id.* Mr. Doe argued that Ms. Roe's actions rendered his motion seeking pseudonymity for the parties "moot" and conceded it should be dismissed. *Id.* at 5–6. That same day, he publicly filed on this Court's docket, an Amended Complaint, substituting the pseudonyms for the parties' real names. ECF No. 17.

---

[1] A pseudonymous party.

The following day, on October 9, Ms. Roe publicly filed an "Urgent and Necessitous Motion for Emergency Sealing or Redactions and for Sanctions." ECF No. 18. She argued that "without giving Defendant or this Court notice, [Mr. Doe] unlawfully filed an Amended Complaint divulging [Ms. Roe's] identity to the public, and directly contradicting his own Pseudonym Motion that was still pending." *Id.* at 2. Ms. Roe argued that, if Mr. Doe had an objection to her filing the California suit, he should have asked this Court to prevent that eventuality between October 1 and October 3. Instead, wrote Ms. Roe, Mr. Doe "divulge[ed] Ms. Roe's identity," calling the behavior "retaliatory," "abusive," "appalling," and "malicious." ECF No. 18-1 at 6. Ms. Roe felt that her name remaining on the public docket was "severely prejudic[ial]" and asked this Court to "temporarily seal the Amended Complaint" (or at least to redact Ms. Roe's name from the docket). *Id.* at 7. Ms. Roe also sought sanctions for the allegedly "bad faith conduct" of Mr. Doe's lawyers "for their purported "intentional and unlawful disclosure of a rape victim's identity, without her consent." *Id.*; ECF No. 18 at 3.

Mr. Doe publicly filed an opposition. He argued that Ms. Roe had "already agreed to use her name in this litigation" (via her opposition to his initial motion). ECF No. 20 at 3. Mr. Doe also added that Ms. Roe affirmatively disclosed her own identity, by filing the California complaint and "widely disseminating her 'unfiled' California complaint to media contacts." *Id.* Mr. Doe argued that Ms. Roe "publicly outed" herself by including details about her prior professional connections with Mr. Doe (including by specifying Ms. Roe's state of residence, recounting her longstanding status as Mr. Doe's ██████████████████, and noting that she had received '██████████████████," etc.). *Id.* Mr. Doe argued that "internet sleuths and ██████████████████' could and did promptly discover and publicly posit Ms. Roe's true name. *Id.* He attached exhibits to support these contentions which included Ms. Roe's true

name and photograph. ECF Nos. 19-1, 19-2. These exhibits, an article and advertisement, each identified Ms. Roe as a ███████████████████████████████ including Mr. Doe. *Id.*

This Court held a hearing on Friday, October 18, 2024. The notice setting the hearing was public. The hearing commenced, open to the public, with reporters conspicuously in attendance. Ms. Roe did not object to this proceeding. During argument, Mr. Doe's counsel *referred to Ms. Roe by her true name and offered as exhibits documents reflecting that true name.* Ms. Roe's attorney did not contemporaneously object either to the mention of Ms. Roe's true name, or to the documents reflecting the same. When Ms. Roe's attorney later approached the podium, she made an objection to this public identification. Ms. Roe's counsel represented to this Court that she intended to submit an affidavit containing evidence supposedly material to the resolution of the pseudonymity issue. This Court recessed until the following Tuesday. Still on October 18, this Court entered an order temporarily placing the record under the "restricted" level of sealing, so that case participants, but not the public, could access the record and the identifications of the parties therein. *See* ECF No. 21; Text-Only Order of October 21, 2024.

Ms. Roe subsequently submitted the affidavit and exhibits. On October 22, this Court held a videoconference hearing, closed to the public, during which it heard further argument. Because many of Ms. Roe's arguments for pseudonymity intersected with prospective arguments which she planned to make in a motion to dismiss, this Court reserved ruling on pseudonymity and held the record restricted to case participants until the conclusion of briefing.

In the meantime, the parties filed supplemental briefing on whether Ms. Roe's failure to object to the prior public proceedings constituted a waiver. Ms. Roe also filed a "Motion for

Protective Order to Proceed Pseudonymously and Objection to Plaintiff's Use of Mrs. Roe's Name," crystalizing her request for pseudonymity. ECF No. 28. That motion stands fully briefed.

On November 26, 2024, Mr. Doe filed a supplemental response to Ms. Roe's motions, informing this Court that Ms. Roe, on November 22, publicly had filed exhibits in the California action including Ms. Roe's true name. ECF Nos. 44; 44-1. "Even assuming [Ms. Roe's] unsealed and unredacted public filing of these documents identifying herself by name was inadvertent," Mr. Doe argued, "this is just one more example of her failure to take reasonable steps to protect her anonymity in this litigation." *Id.* at 3. The same day, Ms. Roe filed a pleading clarifying that she indeed had filed the documents naming herself "inadvertently." ECF No. 49 at 1. She explained that she "contacted the Court in California immediately after Mr. Doe submitted his supplemental response to this Court," and that the offending documents were sealed and refiled with redactions on the California docket. *Id.* at 1–2.

2. Analysis

a. *Protective Order for Use of Pseudonyms*

Parties have no right by default to litigate in federal court under a pseudonym. Indeed, the Federal Rules of Civil Procedure generally require that a complaint "name all the parties" to a lawsuit. Fed. R. Civ. P. 10(a). The public's ability to access the names of the parties "is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). Thus, absent some statutory right to the contrary, the Fifth Circuit requires "a compelling need to protect privacy in a very private matter" to curtail said public's right. *Southern Methodist University Ass'n v. Wynne & Jaffe* ("SMU"), 599 F.2d 707, 713 (5th Cir. 1979) (internal quotations omitted). The

Fifth Circuit has enumerated three factors for courts to consider in determining whether to enter a protective order permitting plaintiffs to proceed under a fictitious name:

> (1) [whether the] plaintiffs seeking anonymity were suing to challenge governmental activity;
>
> (2) [whether] prosecution of the suit [would compel] plaintiffs to disclose information "of the utmost intimacy;" and
>
> (3) [whether] plaintiffs [would be] compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution.

*Stegall*, 653 F.2d at 185 (citing *SMU*, 599 F.2d at 713). Despite these factors "deserv[ing] considerable weight," there exists "no hard and fast formula for ascertaining whether a party may sue anonymously." *Id.* at 186. The court must balance "considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings" in determining whether to allow a party to use a fictitious name.[2] *Id.* at 186 (noting, as relevant to the inquiry in *Stegall*, the "special vulnerability of [its] child-plaintiffs"). It only is in "exceptional cases [that] the need for party anonymity [so] overwhelms the presumption of disclosure mandated by procedural custom" to justify that course. *Id.* at 185.

**Plaintiff Status.** A common theme of the case law is that pseudonymity is granted to plaintiffs. (*See, e.g.*, almost every case cited in the parties briefing). Mr. Doe argues that "[a]llowing a plaintiff to proceed pseudonymously ... permits a party to vindicate public interests in court without exposing [self] to potential 'opprobrium.'" ECF No. 38 at 5 (citing *Stegall*, 653 F.2d at 186). On the other hand, says Mr. Doe, "when a defendant has been accused of wrongdoing by a private plaintiff—here, of "committing tortious acts as part of an extortion scheme"—there is

---

[2] As Ms. Doe argued at the outset of this matter, "[i]f a court finds that the use of a pseudonym is unwarranted, it follows that filing under seal would be as well." ECF No. 11 at 27.

no corresponding public interest in encouraging the defendant to enter the courthouse." *Id.* Mr. Doe claims that this case is not a "civil sexual assault case" brought by Ms. Roe, but a case Mr. Doe brought concerning Ms. Roe's alleged "shakedown of [Mr. Doe] by publishing false statements accusing him of committing assaults." *Id.*

Ms. Roe counters by arguing that Mr. Doe's public interest argument is unsupported—and that the caselaw regarding pseudonymity for "sexual assault victims" corresponds to plaintiffs because "[i]t simply happens [that] most sexual assault victims tend to be plaintiffs." ECF No. 43 at 7. Ms. Roe contends that, had Mr. Doe not "race[d] to the courthouse," this could have been "a sexual assault case" with Ms. Roe as "the plaintiff." *Id.* She points out that "this case is, at its core, about whether or not [Mr. Doe] sexually assaulted M[s]. Roe." *Id.*

This Court recognizes the dearth of case law justifying a defendant's use of a pseudonym. This Court also expects that the question rarely arises, in part, because most plaintiffs, as the masters of their complaints, simply file lawsuits with the true name of the defendant, unconcerned with (or perhaps even hoping for) the possibility that it may harm the defendant's reputation. This Court only is faced with this motion because Mr. Doe chose initially to request private litigation for both parties. This Court also acknowledges that, while Ms. Roe is not the plaintiff *sub judice*, she supposedly had prepared a complaint to proceed as a plaintiff (this action leading to this suit), now has filed claims under a pseudonym in a different court, and, if forced to litigate here, is a likely counterclaimant. Importantly, even under Mr. Doe's lens as the claimant, Ms. Roe is an accuser. Thus, while this Court finds that Ms. Roe's status as a defendant weighs against granting her protective order, this Court is unwilling to bar her request on that basis alone (or even primarily), and will move on to examine the *Stegall* factors and other considerations.

**Factor (1): Challenge to Government Activity.** This factor is tailored to protect those undertaking the daunting task of facing off against governmental entities. It also recognizes that anonymity is typically granted to plaintiffs "challenging the constitutional, statutory or regulatory validity of government activity" because such suits "involve no injury to the Government's 'reputation.'" *SMU*, 599 F.2d at 713. In contrast, "the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm;" therefore, "[b]asic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names." *Id.* Further, because challenges to the "'validity of governmental activity' often present questions of law," allowing the governmental actor to "defend its position … without disclosing plaintiffs' names to the public." *Doe v. Hood*, No. 3:16-cv-789-CWR-FKB, 2017 WL 2408196, at *3 (S.D. Miss. June 2, 2017) (Reeves, J.).

Ms. Roe concedes that "governmental activity does not play a part in this litigation." ECF No. 29 at 2. n.1. Instead, Ms. Roe and Mr. Doe accuse the other of some serious charges, and each apparently has "their good names and reputation" at stake in this litigation. *SMU*, 599 F.2d at 713. Further, unlike with an abstract question of law, Mr. Doe's case to vindicate himself of the accusations he contends are false is necessarily fact- and identity-specific with respect to his putative victim, Ms. Roe. This factor, then, weighs against pseudonymity.

**Factor (2): Disclosure of Intimate Information.** Issues of the "utmost intimacy" are the subject of "very private matter[s]" or "matters of a sensitive and highly personal nature." *SMU*, 599 F.2d at 712–13 (internal quotations omitted). Examples include cases involving "birth control, abortion, homosexuality[,] the welfare rights of illegitimate children or abandoned families," *id.* (internal citations omitted), and religion, *Stegall*, 635 F.2d at 186. Ms. Roe argues that "[a]s a

sexual assault victim," she should be able to proceed pseudonymously "because the underlying conduct involves matters of the 'utmost intimacy.'" ECF No. 29 at 2–3.

One district court has "observe[d] that the Fifth Circuit has not expressly addressed the use of a pseudonym in cases of sexual assault." *Doe v. Trs. of Socorro Indep. Sch. Dist.*, No. EP-18-CV-00162-FM, 2018 WL 11471569, at *2 (W.D. Tex. June 25, 2018). The court, though, considering decisions from trial courts in other circuits, opined that its suit, which concerned the "details of sexual misconduct" "involved matters of the utmost intimacy." *Id.* at *3; *see also Doe v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. CV 22-00338-BAJ-SDJ, 2022 WL 17070549, at *2 (M.D. La. Nov. 17, 2022). This Court finds persuasive the proposition that the details of sexual encounters, particularly allegedly traumatic ones, logically is an area where privacy interests are implicated. This subject matter is Ms. Roe's strongest argument for pseudonymity.

In *Roe v. Patterson*, a district court found that a plaintiff whose complaint "allege[d] much more than a bare claim of assault" (and "include[d] intimate details regarding the nature of the alleged multiple [sexual] assaults") could use a pseudonym. No. 4:19-cv-179-ALM-KPJ, 2019 WL 2407380, at *4 (E.D. Tex. June 3, 2019). That court found it important that its plaintiff had consistently "request[ed] that her privacy be maintained," and had "made no statements to the media or the public regarding her assault," despite the defendants having done so. *Id.* The court also noted that her "privacy interests here [went] beyond simply avoiding embarrassment and humiliation," advancing to "psychological harm" relating from the plaintiff's stringent religious beliefs. *Id.*

On the other side of the coin, a district court in another circuit, in a non-consensual sex case, found that, "[n]otwithstanding the type of allegations, certain facts in this case diminish [the] [pseudonym-seeking] Defendant's privacy interest in proceeding under pseudonym." *Roe v. Doe*,

No. CV 18-666 (CKK), 2019 WL 2058669, at *3 (D.D.C. May 7, 2019). In that case, "according to Plaintiff's counsel, [an] incident report"—which the court "presume[d]" was "publicly accessible"—"prepared by [a forensic department] identifie[d] by name both Plaintiff and Defendant." *Id.* The court, thus, opined that a pseudonym would protect "only a weak privacy interest[.]" *Roe v. Doe*, No. CV 18-666 (CKK), 2019 WL 2058669, at *3 (D.D.C. May 7, 2019). A court in this district recently speculated that a pseudonym-seeking party's privacy interests might be "nullified" where "[t]he proverbial 'cat' is already 'out of the bag'"—that is, where there is evidence that said party's "identity has been publicly linked to th[e] dispute." *Doe Williams v. Williams*, No. 3:24-CV-165-DPJ-ASH, 2024 WL 2805642, at *5 (S.D. Miss. May 31, 2024) (Jordan, J.).

This Court finds this reasoning persuasive and looks to whether Ms. Roe's putative privacy interest in using a pseudonym has been weakened by her identity being publicly linked to this dispute. Mr. Doe argues that Ms. Roe's California complaint included so much detail about Mr. Doe's and Ms. Roe's professional relationship and Ms. Roe's identity, that the public quickly and reasonably identified Ms. Roe (including people using the social media platform "Reddit"). Ms. Roe counters that: (A) people on Reddit speculating based on Ms. Roe's complaint narrowing Ms. Roe's identity to "a number of women" is not equivalent to the public knowing, for sure, who Ms. Roe is; (B) Mr. Doe lacks concrete evidence of same; and (C) allowing this to vitiate pseudonym-use may result in accused parties "hiring public relations teams to use 'anonymous' posters on forums exactly like Reddit." ECF No. 43 at 3–4.

Having examined Mr. Doe's evidence and Ms. Roe's California complaint, this Court is skeptical that said complaint does not weaken Ms. Roe's privacy interest in proceeding anonymously. The complaint is quite specific and lines up with Ms. Roe's public profile.

*Compare* ECF No. 35-1 *with* ECF Nos. 19-1, 19-2. Additionally, Ms. Roe's alleged involvement in leaking a detailed and graphic account of this story to the press—and indeed, in her very first (public) pleadings in this case (ECF No. 11 at 10–14)—even if anonymously, is inconsistent with a demonstrably strong desire for confidentiality.

Additionally, Ms. Roe's true name was a matter of public record on this Court's docket for the ten days between Mr. Doe's filing of his first amended complaint and this Court's restriction of the docket. In that time, while it appears that most established news media companies reported on the case without using Ms. Roe's true name, other individuals still could (and did) see and re-publish that information. Ms. Roe's true name was also spoken aloud at a public hearing before this Court. Ms. Roe can retort that all this was due to Mr. Doe's actions and that she had quickly filed an urgent motion to seal or redact her identity. On the other hand, Ms. Roe herself also "inadvertently" filed her own name on the California docket, which remained public for a few days. *See* ECF Nos. 44, 49. Ultimately, regardless of fault, the "[t]he proverbial 'cat' is already 'out of the bag'" and Ms. Roe's privacy interest served by using a pseudonym is accordingly weakened. As whole, this factor leans in favor of a pseudonym, but only marginally.

**Factor (3) Concession to Illegal Conduct.** This factor is meant to recognize that, to vindicate rights, plaintiffs might need to reveal things about themselves that either could subject them to the threat of prosecution or similar scrutiny. In recognizing this factor, the Fifth Circuit panel in *SMU* cited, as examples, plaintiffs being permitted to use pseudonyms in: *Roe v. Wade*, where a woman who wanted an abortion was blocked by a criminal abortion statute (410 U.S. 113 (1973)); *Doe v. Shapiro*, involving a class action of mothers who refused to disclose their children's fathers, against a regulation of the Connecticut State Welfare Department (302 F. Supp. 761 (D. Conn. 1969)); and *Doe v. Commonwealth's Attorney for City of Richmond*, where

homosexual men challenged the constitutionality of a Virginian statute criminalizing "sodomy" (403 F. Supp. 1199 (E.D. Va. 1975)).

The *Stegall* panel applied this factor to its own plaintiffs who, while they did not "confess either illegal acts or purposes, … by filing suit, made revelations about their personal [religious] beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." 653 F.2d at 186. A court in this district in *Doe v. Hood* applied this logic to a case where the plaintiffs, while they "[did] not intend to engage in illegal conduct," could "invite ire in response to both homosexual conduct as well as plaintiffs' inclusion on Mississippi's sex offender registry." *Hood*, 2017 WL 2408196, at *3 (Reeves, J.).

Ms. Roe argues that she "would be subject to a similar type of 'opprobrium'" as the plaintiffs in *Hood*. ECF No. 29 at 3. She alleges that "Mr. Doe is a ███████████████ ██████████" who "[have] repeatedly portrayed [Ms. Roe] as a lying extortionist, setting the stage for his supporters to harass and retaliate against Mrs. Roe and her family." *Id.* at 3–4. Ms. Roe misapplies the relevant *Stegall* factor, which is about whether a party would be "compelled to admit" the status that renders them subject to criminal liability or public censure, not whether the opposing party's contentions would be damaging. Ms. Roe, in defending herself or pressing her own claims, appears to admit only to being a "victim." Further, "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Stegall*, 653 F.3d at 186. Ms. Roe has not submitted an affidavit or declaration for this Court's consideration identifying particularized threats flowing from her identification. This factor weighs against pseudonymity.

**Waiver.** The court in *Doe Williams* reasoned that the extent of the pseudonym-seeking party's lawyers' "efforts to protect her identity" in related litigation "could speak to … waiver."

2024 WL 2805642, at *5 (Jordan, J.). While that court found its evidence insufficient to deny a pseudonym on that basis, this Court agrees with the concept, which squares with the general juridical principals of litigation.

This Court critically examines Ms. Roe's changing positions. When Mr. Doe initiated this action, hoping both parties might litigate anonymously, Ms. Roe was more concerned with airing Mr. Doe's identity to the public than preserving her own confidentiality. ECF No. 11 at 12 n.11 (taking the position that "[a]lthough Ms. Roe believes that her name warrants protection and that ultimately the California court should decide that issue, she is willing to proceed using her name here if this Court believes that is necessary in denying [Mr. Doe's] motion"). Indeed, Ms. Doe believed that "no basis under Fifth Circuit law exists to grant Mr. Doe's request to seal the record or redact publicly filed documents to conceal the identities of [the parties]," *id.* at 24 (emphasis added); that is, until she had already made Mr. Doe's identity public, and the remaining question was whether she could use a fictitious name. *Compare* ECF No. 18-1 at 5 (Ms. Roe arguing, a week later, that while "sealing and redacting judicial records is disfavored in the Fifth Circuit, … [h]ere, the balancing test weighs heavily in favor of protecting Ms. Roe's identity.").

This Court identified the issue of waiver to the parties after, at the October 18, 2024, hearing, Ms. Roe's counsel commenced an oral argument related to an urgent motion for sealing in open court, with no request for closure or side bar, after Mr. Doe's counsel used Ms. Roe's true name in his argument without contemporaneous objection, and after Mr. Doe's counsel moved for admission of exhibits containing her true name without contemporaneous objection. Ms. Roe claimed that her prior filing of the urgent motion and her later objection to the use of her name demonstrates a lack of waiver or forfeiture; but if she truly was concerned about keeping an identity confidential, one might expect an attorney would have rocketed out of his seat at the mere mention

of the name in open court. When this Court asked Ms. Roe's counsel why she did not object to members of the public and press sitting in the courtroom during the hearing, she claimed that she had not turned around and did not know those people were present. If true, that only further emphasizes a lack of precaution in preserving Ms. Roe's identity. Later, Ms. Roe "inadvertently" filed her true name on the public docket, which only Mr. Doe's attorneys caught, after a few days.

This Court permitted the parties to submit supplemental briefs on this issue, but the legal authorities therein cited either were non-controlling, inapposite, or inconclusive.[3] Absent a controlling directive, this Court need only observe that the facts implying a waiver (or at least militating against a legitimate and countervailing interest of confidentiality) are present. Therefore, either waiver or forfeiture weighs against granting pseudonymity.

For the foregoing reasons, having considered the facts of this case through the guidance of this Circuit in *Stegall* and *SMU*, this Court finds this is not one of those "exceptional cases [where] the need for party anonymity [so] overwhelms the presumption of disclosure mandated by procedural custom." 653 F.3d at 185. This Court, then, perhaps having granted Ms. Roe's "urgent" motion seeking anonymity (ECF No. 18), in part and temporarily, now **denies** it; **denies** Mr. Doe's initial motion for both parties to proceed via pseudonym (ECF No. 4) (as moot and withdrawn as to Mr. Doe's identity); and **denies** Ms. Roe's motion for a protective order to proceed pseudonymously (ECF No. 28).

---

[3] *See, e.g., Bradley v. Cooper Tire & Rubber Co.*, No. 4:03-cv-94 DPJ-LRA, 2008 WL 11506798, at *3 (S.D. Miss. Jan. 7, 2008), (Jordan, J.) (noting that some courts "generally [have] held that disclosure of confidential information in open court constitutes waiver," but declining to opine "that mere mention of confidential material in open court automatically constitutes waiver," and acknowledging that "waiver of confidentiality is a fact-specific inquiry" (internal citations omitted)), *order clarified*, No. 4:03-cv-94-DPJ-JCS, 2008 WL 11506797 (S.D. Miss. June 3, 2008).

### b. *Sanctions*

This Court also briefly addresses Ms. Roe's request that Mr. Doe's lawyers be sanctioned under Rule 11. Ms. Roe asked that counsel suffer sanction because, "[w]hile Mr. Doe's motion to proceed under a pseudonym was still pending, he filed an amended complaint for the sole purpose of divulging Ms. Roe's identity, to retaliate, harm and subject her to victim shaming and blaming." ECF No. 18-1 at 6. Seemingly because the necessary predicates for a Rule 11 motion for sanctions are not established,[4] Ms. Roe calls upon the court to so sanction based on its "inherent power" to "sanction bad faith conduct." *Id.* (quoting *Hernandez v. State Farm Lloyds*, 2017 WL 5163366, at *1 (W.D. Tex. Aug. 17, 2017); *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)). The Fifth Circuit cautions courts to exercise this power "sparingly," and, to so sanction, this Court would need to "make a specific finding that the attorney acted in 'bad faith.'" *Chaves*, 47 F.3d at 156 (citing *Nat. Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406–07 (5th Cir.1993); *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir.1993)).

---

[4] Rule 11 of the Federal Rules of Civil Procedure permits sanctions, under certain circumstances, for an attorney who presents matter for "improper purpose" (e.g., "to harass" or "cause unnecessary delay"), argues for frivolous positions, etc. The rule requires that:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). While Ms. Roe intimated that she would be "seeking sanctions … pursuant to [Rule 11]," but, to this Court's knowledge, the parties have not undergone the procedure above. ECF No. 18-1 at 6.

This Court is not prepared to make such declarations of bad faith. The ordinary course of judicial procedure would have preferred Mr. Doe to wait for the court's leave before acting adverse to the request he previously asked this Court to entertain. Under some facts, this Court might find departure from that ordinary course worthy of punishment. Mr. Doe's course of action certainly takes on a disconcerting hue of "tit for tat"—given its express connection with Ms. Roe's bypassing this Court to file Mr. Doe's true name publicly in another court. That said, the pending motion to use pseudonyms was Mr. Doe's, and, once Ms. Roe opposed the motion and then frustrated its purpose, Mr. Doe identified the mootness of his motion and effectively withdrew it. Only then did he file his first amended complaint with the true names of the parties.

Further, while Mr. Doe did not wait for this Court to dismiss his motion for mootness or provide some runway of notice to the Court and Ms. Roe prior to filing this amended complaint, Mr. Doe may have felt pressured by the clock. October 8, 2024 (the day of his amended complaint) was twenty-one days after Ms. Roe filed her "waiver of service," and, thus, the deadline for Mr. Doe to amend his pleading "as a matter of course"—that is, without permission of Ms. Roe or this Court. See Fed. R. Civ. P. 4(d)(4); Fed. R. Civ. P. 15(a). Mr. Doe argues that "nothing prohibited him from identifying both parties in the amended complaint." ECF No. 20 at 4. Ms. Roe, indeed, identifies no cognizable reason why Mr. Doe initially could not have captioned his suit with Ms. Roe's true name, so Mr. Doe's exercise of his right to amend to re-caption the case in that manner is not inherently unreasonable.

Overall, while Mr. Doe's course of conduct was not ideal or preferred, under the circumstances of this case, this Court does not find the severe pronouncement of "bad faith"—or concordant sanctions—warranted. Ms. Roe's motion for sanctions is **denied**.

### III.    CONCLUSION

This Court closes with a note that the lawyers in this case—perhaps reflecting the grave and extreme dispute between the parties they represent—have exchanged a great deal of strong words and *ad hominem* attacks, speculating as to improper motives, underhanded tactics, and more. The parties are reminded to maintain the professionalism and decorum expected of those practicing in federal court, even as tempers and emotions flare.

**IT IS ORDERED** that the parties will proceed in this suit under their true names rather than pseudonyms, and as such:

1. "Plaintiff's Motion for Leave to File Complaint Under Pseudonym, to Proceed Pseudonymously, and to File Materials Under Seal" (ECF No. 4) is **DENIED**.

2. "Defendant's Urgent and Necessitous Motion for Emergency Sealing or Redactions and for Sanctions" (ECF No. 18) is **DENIED**.

3. "Motion for Protective Order to Proceed Pseudonymously and Objection to Plaintiff's Use of Mrs. Roe's Name" (ECF No. 28) is **DENIED**.

4. This order shall be filed publicly, but only:

    a. after the deadline for appeal has expired; or

    b. if the parties advise the court that they do not intend to seek an appeal; or

    c. the Court of Appeals resolves, or declines to entertain, such a challenge.

5. The current sealing/restriction on the record is to remain in place.

    Ms. Roe may also file a notice that she intends to seek immediate appellate review of this order, at which point, this Court will preserve the restriction until the Court of Appeals resolves, or declines to entertain, such a challenge.

Should any of the above contingencies occur, the docket and its papers (barring any matters subject to a motion of the preceding type) shall be made public.

**SO ORDERED** this the __24th__ day of __September__ , 2025.

/s/HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**